UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Geraldine D. Evans,<br><br>        Debtor. | Case No. 22bk06249<br><br>Chapter 13<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court comes on for consideration on LaSalle Street Financial Services, LLC's Motion to Vacate Order Confirming Chapter 13 Plan (Docket 24) for Lack of Due Process as to LaSalle Street Financial Services, LLC [Dkt. No. 50][1] (the "Motion") filed by LaSalle Street Financial Services, LLC ("LaSalle") in the above-captioned case. In the Motion, LaSalle argues that it was deprived of due process in the confirmation of the chapter 13 plan in the above-captioned case.

LaSalle's Motion is poorly conceived in many ways. It buries the lede; arguing general issues of constitutional due process and service, only making passing mention to the fact that LaSalle had no claim when notice of the case, the bar date and the confirmation hearing were provided. LaSalle took no steps of its own to protect its rights, but complains loudly of those rights being violated. Even after supplemental briefing necessitated by LaSalle's failure to address its status as the postpetition acquirer of a claim, LaSalle's arguments fared no better.

For the reasons more fully discussed below, LaSalle's Motion will be, by order entered concurrent with this Memorandum Decision, DENIED.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy courts for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

---

[1]      References to docket entries in the above-captioned bankruptcy case will be denoted as "Dkt. No. ___." References to claims filed in the above-captioned bankruptcy case will be denoted as "Claim No. ___."

A bankruptcy court judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy court judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court judge may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court judge may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1) & (c).  Absent consent, the bankruptcy court judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy court judge must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall,* 564 U.S. 462 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court judge hearing and determining the matter.  *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court judge's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

The Supreme Court has made clear that judges of bankruptcy courts have, as do all judges, jurisdiction to hear matters relating to their own orders.  *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re Kimball Hill, Inc.,* 565 B.R. 878, 890 (Bankr. N.D. Ill. 2017) (Barnes, J.).  Confirmation of a chapter 13 is specified as a core proceeding, 28 U.S.C. § 157(b)(2)(L), and may only rise in a bankruptcy case.  *In re Woodruff,* 600 B.R. 616, 621 (Bankr. N.D. Ill. 2019) (Barnes, J.).  It follows that a motion to vacate an order of confirmation remains within the bankruptcy court's jurisdiction and "stems from the bankruptcy itself," thus such a motion may constitutionally be decided by a bankruptcy court judge.  *Stern,* 564 U.S. at 499.

As a result, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion.

HISTORY

On June 1, 2022 (the "<u>Petition Date</u>"), Geraldine D. Evans (the "<u>Debtor</u>") commenced the above-captioned chapter 13 case by filing a voluntary petition for relief.  *See* Voluntary Petition for Individuals Filing for Bankruptcy (Official Form 101) [Dkt. No. 1] (the "<u>Petition</u>").  In addition to the Petition, the Debtor filed the required Schedules and Statement of Financial Affairs, *id.* (the "<u>Schedules</u>"), and her proposed chapter 13 plan.  Chapter 13 Plan (Official Form 113) [Dkt. No. 2] (the "<u>Plan</u>").

Included with the Petition is Debtor's Schedule D, which in turn includes a creditor named Pine Valley One Real Estate ("<u>Pine Valley</u>"), scheduled with a $76,700.00 secured claim for "Real Estate Taxes."  Petition, Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106) ("<u>Schedule D</u>"), at ¶ 2.4.  Pine Valley's address was scheduled as "Pine Valley One Real

2

Estate LLC, 100 N. LaSalle St., Ste. 710, Chicago, IL 60602." *Id.* A substantially similar secured claim was scheduled for Cook County Clerk ("Cook County") in the identical amount of $76,700.00. Schedule D, at ¶ 2.1.

Notice of the commencement of the case was filed with the court on June 2, 2022, Notice of Chapter 13 Bankruptcy Case (Official Form 309I) [Dkt. No. 9] (the "Notice of Commencement"), and sent to all creditors by the Bankruptcy Noticing Center on June 4, 2022. Certificate of Notice [Dkt. No. 12] (the "Certificate of Notice"). The Certificate of Notice shows that the Notice of Commencement was sent on that same date to Pine Valley at the address on Schedule D by first class mail and to Cook County electronically by the method it has requested for such notices.

The Certificate of Notice did not just notify creditors of the Petition Date. It notified them of, among other things, the Petition Date, the date for the meeting of creditors under section 341 of the Bankruptcy Code, the deadline for filing nongovernmental claims (in this case, August 10, 2022) (the "General Bar Date"), the deadline for filing claims by governmental units (in this case, November 28, 2022) (the "Governmental Bar Date") and the date and location of the hearing on confirmation of the Plan (in this case, July 19, 2022, before now-retired Judge Carol A. Doyle) (as and including continued hearings, the "Confirmation Hearing"). *Id.* Included with the Certificate of Notice was a copy of the Plan, *id.*, which provided no specific treatment of Pine Valley's secured claim, but did seek a valuation of the claim of Cook County secured by 15830 S. Campbell Ave. Harvey, IL 60426 with PIN 28-13-413-027-0000 (the "Property"). Plan, at § 3.2.

On July 19, 2022, the court conducted the first Confirmation Hearing in the case. At that time, no party had objected to confirmation of the Plan. While it is unclear what transpired at the July 19, 2022, hearing, the court can intuit that Thomas H. Hooper, the chapter 13 trustee assigned to the above-captioned case (the "Chapter 13 Trustee"), observed deficiencies in the Plan and informed the court of the same. *See* 11 U.S.C. § 1302(b)(2)(B) (making it a duty of chapter 13 trustees to appear and be heard at hearings concerning the confirmation of a plan).

The Confirmation Hearing was continued in open court to August 16, 2022, and that continuance was memorialized on the docket of the case. *See* Confirmation Hearing Continued [Dkt. No. 16].

In between July 19, 2022, and August 16, 2022, the Debtor modified the Plan twice, *see* Amended Chapter 13 Plan (Official Form 113) [Dkt. No. 19] (the "First Amended Plan"), Amended Chapter 13 Plan (Official Form 113) [Dkt. No. 22] (the "Second Amended Plan"), and the Chapter 13 Trustee filed his Trustee's Objection to Confirmation of Plan [Dkt. No. 18] (the "Trustee Objection"). Neither the First Amended Plan nor the Second Amended Plan changed the lack of treatment of Pine Valley. The Trustee Objection addressed only Cook County's treatment therein.

Also between those dates, the General Bar Date passed. Pine Valley filed no claim—not by the General Bar Date and not after. Cook County did file a claim on August 12, 2022, well before the Governmental Bar Date. Proof of Claim (Official Form 410) [Claim No. 8] (the "Cook County Claim"). The Cook County Claim made clear that its claim was for the sold taxes contingent upon a Sale in Error. *See* Cook County Claim, Attachment 1. The total claim amount asserted was $27,565.67 for tax years 2009, 2010, 2011, 2013, 2020 and 2021 for real property taxes sold under certificate of purchase 19S-0000608 for the Property. *Id.*

3

As to the Cook County Claim, the Plan amendments did affect it. In the First Amended Plan, it appears the Debtor changed the treatment from Cook County Clerk to Cook County Treasurer. First Amended Plan, at § 3.2. In the Second Amended Plan, it appears that the Debtor changed the treatment of Cook County to reflect the amount of the Cook County Claim. Second Amended Plan, at § 3.2.

On August 16, 2022, Judge Doyle conducted the continued Confirmation Hearing and confirmed the Second Amended Plan. Order Confirming Plan [Dkt. No. 24] (the "Confirmation Order"). On May 18, 2023, Judge Doyle retired and the above-captioned case was reassigned to the undersigned. Order Case Reassigned [Dkt. No. 47].

On August 2, 2023, LaSalle filed the Motion alongside a motion for relief from stay in the above-captioned case, LaSalle Street Financial Servicess [sic], LLC's Motion to Modify the Automatic Stay as to 2340 186th Street, Unit 21, Lansing, IL Regarding 29-36-410-003-1050 or in the Alternative to Set Date for the Debtor to Pay the Real Estate Taxes [Dkt. No. 51] (the "Relief from Stay Motion")[2], and set a presentment hearing on both motions for August 10, 2023. On August 3, 2023, the Debtor filed a notice of objection to each motion. Notice(s) of Objection [Dkt. Nos. 52 & 53].[3]

On August 8, 2023, LaSalle filed an amended Relief from Stay Motion to correct the address for the Property. LaSalle Street Financial Servicess [sic], LLC's Amended Motion to Modify the Automatic Stay as to 15830 S. Campbell Avenue, Harvey, Illinois 60426 Regarding 28-13-413-027-0000 or in the Alternative to Set Date for the Debtor to Pay the Real Estate Taxes [Dkt. No. 56] (the "Amended Relief from Stay Motion").

The court conducted the presentment hearing on both motions on August 10, 2023, which hearing was continued in open court on that date and a number of dates thereafter while the parties negotiated between each other. At a continued hearing on September 14, 2023, the parties appeared to be at an impasse and the court therefore ordered briefing on the Motion. [Scheduling] Order [Dkt. No. 66] (the "Scheduling Order").[4] At LaSalle's counsel's request, LaSalle was given until September 21, 2023, to amend the Motion, a response deadline to the amended Motion was set for

---

[2]   Despite the title referencing some different property, the Relief from Stay Motion seeks to modify the automatic stay in this case under 11 U.S.C. § 362(d)(1) for cause to allow LaSalle to obtain a deed to the Property based on the 2009-13 real property taxes sold to Pine Valley under certificate of purchase 19S-0000608.

[3]   A notice of objection is a procedural device under the Local Bankruptcy Rules for the Bankruptcy Court of the Northern District of Illinois (the "Local Rules" and, individually, "LBR __"). It is utilized by a party with an objection to a motion to ensure that said motion is not granted without hearing at its initial presentment hearing, but instead is called and heard. LBR 9013-1(F); *In re Johnson*, 650 B.R. 904, 908 (Bankr. N.D. Ill. 2023) (Barnes, J.).

[4]   The Relief from Stay Motion was not set on briefing for two reasons. First, as the court stated at the hearing on September 14, 2023, its relief is subservient to the Motion. Should the court deny the Motion, it is hard to see how the Relief from Stay Motion could be granted. Second, creditors such as LaSalle have made a habit of inundating debtors with multiple motions at the same time, all seeking a variation of the relief sought in the others. This increases the burdens on debtors to respond exponentially. The court cannot view this tactic as anything other than an attempt to win a war by attrition against parties with limited means as opposed to winning on the merits.

October 12, 2023, and a reply deadline for October 26, 2023.  Scheduling Order.  The matter was set for further hearing on November 9, 2023.  *Id.*

On September 21, 2023, in an apparent attempt to comply with the Schedule Order, LaSalle filed what was docketed as an amended Motion. [Dkt. No. 67] (the "Incorrect Filing").  It was not, however, an amended Motion but a refiling of the Amended Relief from Stay Motion.  As a result, no amended Motion was ever filed with the court.[5]

On October 12, 2023, the Debtor filed its response to the Motion though related that response on the docket to the Incorrect Filing.  Debtor's Response to LaSalle Street Financial Services, LLC's Motion to Vacate Order Confirming Chapter 13 Plan for Lack of Due Process as to LaSalle Street Financial Services, LLC [Dkt. No. 69] (the "Response").  On October 26, 2023, LaSalle filed its reply.  LaSalle Street Financial Services, LLC's Reply in Support of its Amended Motion to Vacate Confirmation (Docket 67) [Dkt. No. 73] (the "Reply").

On November 9, 2023, the court conducted a hearing on the Motion, the Response and the Reply.  At that hearing, the court discussed with counsel for both parties that the matter seemed to be predicated on incorrect assumptions and asked that the parties supplement their briefing after having reviewed the court's earlier decision in *In re Suburban W. Props., LLC*, 504 B.R. 477, 483 (Bankr. N.D. Ill. 2013) (Barnes, J.).  The court thereafter entered a supplemental scheduling order on the Motion setting a supplemental briefing deadline for LaSalle of November 30, 2023, and a supplemental response deadline for the Debtor of December 21, 2023, solely to address *Suburban West*.  [Scheduling] Order [Dkt. No. 78] (the "Supplemental Scheduling Order").

Thereafter LaSalle filed LaSalle Street Financial Services, LLC's Supplemental Brief in Support of its Amended Motion to Vacate Confirmation (Docket 67) [Dkt. No. 81] (the "Supplemental Brief") and the Debtor filed Debtor's Supplemental Brief in Response to LaSalle Street Financial Services, LLC's Supplemental Brief in Support of its Amended Motion to Vacate Confirmation [Dkt. No. 82] (the "Supplemental Response").  When filed, the Supplemental Brief was related to the Incorrect Filing on the docket and the Supplemental Response was related to the Response.

As per the Supplemental Scheduling Order, upon the filing of the Supplemental Response, briefing on the matter was concluded and the matter was taken under advisement.

This Memorandum Decision constitutes the court's ruling on the matter before it.  In considering the matter, the court has considered the Motion, the Response, the Reply, the Supplemental Brief and the Supplemental Response, as well as the arguments made by counsel at the various hearings noted above.  Though these items do not constitute an exhaustive list of the filings in the above-captioned case, the court has also taken judicial notice of the contents of the dockets and claims register in this matter.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D.

---

[5]     The court, of course, cannot project what a truly amended Motion might have contained.  No party appears to have seen the mistake and the court did not become aware of the issue until after the matter was taken under advisement.  It is each party's obligation to exercise reasonable diligence to ensure that the filings they intend to make are actually made.  Failure to do so results, as it does here, in the court considering matters as filed, not as was intended to be filed.

Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## SUMMARY OF ISSUES PRESENTED

The foregoing history makes no mention of LaSalle, the movant, other than in relation to the Motion and the Relief from Stay Motion. That is because, other than through the filing of the Motion and the Relief from Stay Motion (and the filings made in conjunction therewith), LaSalle has not been a part of this case.

By its own filings, LaSalle was not a creditor of the debtor at the time the case was commenced. As it states, on June 29, 2022 (the "Assignment Date"), "Pine Valley One Real Estate, LLC[,] assigned the Certificate of Purchase to LaSalle Street Financial Services, LLC." Motion, at ¶ 5. Attached to the Motion is the certificate of purchase and a typed attachment, demonstrating that the assignment of the certificate of purchase was in consideration for $10.00. Motion, Ex. [_][6] (docketed together as "Certificate of Purchase"). The typed attachment is not notarized; it is merely signed by "Evan Hareras, CEO Pine Valley One Real Estate, LLC." There is no record on the docket of this case of Pine Valley having assigned the certificate of purchase to LaSalle. Having done nothing to notify the Debtor of the sale, LaSalle then waited over a year to file the Motion and the Relief from Stay Motion.

The resulting issue is very narrow. The sole question before the court is whether the court should vacate the order of confirmation considering LaSalle's allegations of a denial of due process. The short answer is "no." The long answer, including explanation of the same, follows.

## LEGAL STANDARD

A party seeking to alter, amend or vacate a prior order of a court bears, as would any other movant, the burden of showing its entitlement to the relief sought. *In re Bluberi Gaming Techs., Inc.*, 554 B.R. 841, 856 (Bankr. N.D. Ill. 2016) (Barnes, J.) ("In every matter before the court, regardless of what burdens may apply after, the movant bears the initial burden of demonstrating that it at least has a colorable claim to the relief it is requesting.").

In the instance of vacating a confirmation order, the movant must face that burden in light of the Supreme Court's rulings on the same. In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the Supreme Court considered the request of a student loan lender to vacate an order confirming a chapter 13 plan for an alleged lack of due process and concluded that even had the plan been confirmed in legal error, the finality of the confirmation order rendered the plan binding on the creditor. *Id.* at 275. In particular, the lender alleged that its rights as affected under the plan required service of process under Rule 7004 of Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules" and each, "Rule __"). The Supreme Court considered this argument, stating that

---

[6]     LaSalle did not number, letter or otherwise provide any organization to its Exhibits. Though the typed attachment has words of conveyance on the endorsement on its back that might result in this being a sale rather than an assignment, LaSalle has chosen to characterize this transfer as an assignment in the Motion. Motion, at ¶ 5.

6

Espinosa's failure to serve United with a summons and complaint deprived United of a right granted by a procedural rule. *See* Fed. Rule Bkrtcy. Proc. 7004(b)(3). United could have timely objected to this deprivation and appealed from an adverse ruling on its objection. But this deprivation did not amount to a violation of United's constitutional right to due process. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Jones v. Flowers,* 547 U.S. 220, 225, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) ("[D]ue process does not require actual notice … ").

*Espinosa*, 559 U.S. at 272; *see also Snyder v. Barry Realty, Inc.*, 60 F. App'x 613, 615 (7th Cir. 2003) (where the Court of Appeals condoned the District Court's conclusion that, while the party did not get direct notice, it could have learned about a matter "through other means within their control."); *Mason v. RJK Investors* (*In re Klarchek*), 509 B.R. 175, 186 (Bankr. N.D. Ill. 2014) (Barnes, J.) ("Due process only requires notice that can be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' *Mullane,* 339 U.S. at 314, 70 S.Ct. 652 ….").

It is important to note that the Supreme Court's foregoing conclusion was based in no small part on the lender, United, having actual notice of the proceeding in question. *Id.* That is of no small import here as well. Here, despite the allegations of LaSalle, Rule 7004 is not implicated.

LaSalle's Motion evidences a fundamental misunderstanding between the rules of notice and the rules of service of process in bankruptcy. The former are set forth in Rule 2002, while the latter are in Rule 7004. Unless a matter is of a nature requiring Rule 7004 service of process (an adversary commenced under Rule 7001 or a contested matter governed by Rule 9014) or a rule specifically requires Rule 7004 notice (*e.g.*, Rule 6004(c) requiring service of a motion under Rule 7004 to sell property free and clear of liens under section 363(f)), the procedural rules of bankruptcy require only notice under Rule 2002.

Rule 2002 also specifies matters where notice, not service, is required. These include, but are not limited to, notice of: the commencement of the case/order for relief the meeting of creditors under section 341, Fed. R. Bankr. P. 2002(f)(1); the meeting of creditors, Fed. R. Bankr. P. 2002(a)(1); time fixed for filing claims under Rule 3002, Fed. R. Bank. P. 2002(f)(3); the time fixed for filing objections to confirmation of a chapter 13 plan, Fed. R. Bankr. P. 2002(a)(9); the hearing to consider confirmation of a chapter 13 plan, Fed. R. Bankr. P. 2002(b); and the entry of an order confirming a chapter 13 plan, Fed. R. Bank. P. 2002(f)(7).

Each of the foregoing rules require notice to "the debtor, the trustee, all creditors and indenture trustees." Fed. R. Bankr. P. 2002. Creditors is not a defined term in the Bankruptcy Rules but such Bankruptcy Rules incorporate by reference the definitions from the Bankruptcy Code itself. Fed. R. Bankr. P. 9001 (incorporating, by reference, 11 U.S.C. § 101). The Bankruptcy Code defines creditor to mean, in pertinent part, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). The Bankruptcy Code further provides that the order for relief is the petition date for voluntary bankruptcy cases. 11 U.S.C. § 301(b).

DISCUSSION

As noted above, LaSalle complains of a lack of due process with respect to the confirmation of the Debtor's confirmed plan.  In particular, LaSalle complains of a lack of notice to it, a lack of service under Rule 7004 to its predecessor, Pine Valley, and the lack of treatment of Pine Valley under Section 3.2 of the Plan.

The court will take up each issue in turn.

A.      Notice to LaSalle

As noted at the outset, this argument by LaSalle buries the lede.  Up front in LaSalle's Motion, LaSalle argues that the Debtor failed to list LaSalle in her Petition or Schedules and failed to serve LaSalle with the Plan or any later amended version of the Plan.  Motion, at ¶ 2.  It also argues that it was given no notice of the General Bar Date.  Motion, at ¶ 13.  But LaSalle, by its own admission, was not a creditor on the Petition Date, and therefore could not have been listed in the Debtor's Petition or Schedules as filed at that time.

The Debtor was under no duty to discover a hidden, postpetition creditor such as LaSalle and revise the otherwise valid notices in the case to include it.  *In re Circuit City Stores, Inc.*, 439 B.R. 652, 660 (E.D. Va. 2010), ("[a]n unknown creditor 'is not entitled to actual notice of the debtor's bankruptcy filing.'") (*citing Jones v. Tessler* (*In re Jones*), 492 F.3d 242, 250 (4th Cir. 2007)); *In re Arch Wireless*, 332 B.R. 241, 255 (Bankr. D. Mass. 2005) ("[I]t is the debtor's knowledge of a creditor, not the creditor's knowledge of his claim, which controls whether the debtor has a duty to list that creditor.").

Had LaSalle alleged that it had given notice to the Debtor of the acquisition of the claim or of the assignment of the claim by Pine Valley, perhaps then LaSalle could claim the Debtor would have had a duty to amend her Schedules and notice various items.  No such allegation has been made.

Of course, had LaSalle taken any other steps to establish itself as a creditor after it had acquired the claim from Pine Valley, it might have had an argument that the service of the First Amended Plan, the Second Amended Plan or the Confirmation Order, all which happened after LaSalle had acquired Pine Valley's claim, were deficient.  There are multiple ways in which this could have happened.  The simplest of which, was to file a claim as the General Bar Date had not passed on the Assignment Date.  But it did not do so.  No proof of claim has ever been filed by Pine Valley or LaSalle in the above-captioned case.

True, LaSalle might argue it didn't know of the bankruptcy case and thus did not know of the General Bar Date.  It does not argue that, however.  Nowhere in LaSalle's Motion does it disclaim actual knowledge of the bankruptcy case.  Only a lack of notice (or service).

There were several ways a postpetition acquiror of a claim might know of a bankruptcy case.  The first and most obvious is the seller, or in this case the assignor, might disclose the existence of the case.  The second and almost equally obvious is for the buyer, or in this case assignee, to do reasonable diligence in acquiring the claim.  These are both methods within the reasonable control of Pine Valley and LaSalle.  *Snyder*, 60 F. App'x at 615.  Had either occurred, LaSalle would have

8

actual knowledge of the case prior to the General Bar Date and the confirmation hearing.  Due process is "more than satisfied" where the party received actual notice of the proceeding.  *Klarchek*, 509 B.R. at 186 (*citing Espinosa,* 559 U.S. at 261).

Of course, if Pine Valley had adequate notice (discussed below), it could have preserved its right by filing a claim.  *See* Fed. R. Bankr. P. 3002.  The Seventh Circuit has made clear that secured creditors must file claims in order to preserve their right to treatment under a plan.  *In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015).  In *Pajian*, the Seventh Circuit stated that:

> A creditor must file a proof of claim in order to participate in Chapter 13 plan distributions.  *See* Fed. R. Bankr. P. 3021 (permitting distribution to creditors "whose claims have been allowed"); 11 U.S.C. § 502(a) (providing that a claim is "deemed allowed" when a proof of claim is filed under section 501); *see also In re Brisco,* 486 B.R. 422, 430 (Bankr. N.D. Ill. 2013); *In re Strong,* 203 B.R. 105, 112 (Bankr. N.D. Ill. 1996).  But while all creditors—secured and unsecured—must file a proof of claim in order to receive distributions, a secured creditor who fails to do so can still enforce its lien through a foreclosure action, even after the debtor receives a discharge.  *See In re Penrod,* 50 F.3d 459, 461–62 (7th Cir.1995).

*Id.*  Had Pine Valley filed a claim, the parties could have filed a notice of transfer of that claim.  The docket in the above-captioned cases demonstrates an instance of just such a notice of transfer for another creditor.  [Dkt. No. 74].  Pine Valley could have in filing such a claim designated where it wished to receive objections, *see* Fed. R. Bankr. P. 3007(a)(2)(A), and could have changed that throughout the case.  11 U.S.C. § 342(e)(1).

Nothing along those lines occurred.  In fact, nothing at all occurred.  It is worth, therefore, restating that the Debtor was under no duty to discover a hidden, postpetition creditor such as LaSalle and revise the otherwise valid notices in the case to include it.  To adopt LaSalle's position would turn bankruptcy proceedings on their heads.  It would put the burden on debtors to discover things that are undiscoverable.  Even if they were discoverable, it is not on a debtor to constantly search for new creditors to notify them of actions that were not directed at them.  Neither Pine Valley nor LaSalle were addressed in the Debtor's Plan.  It was the burden of these parties as creditors to act to preserve their own rights, especially in chapter 13.[7]

This is especially true considering the court's analogous precedent in this regard.  *In re Suburban W. Props., LLC*, 504 B.R. 477, 485 (Bankr. N.D. Ill. 2013) (Barnes, J.).  The existence of *Suburban West* and it not being addressed by either party is why the court ordered supplemental briefing in this matter.

In *Suburban West*, the court took up the question of whether a foreclosure under Georgia law was invalid when the foreclosing party failed to notice a recipient of a transferred interest in the property whose transfer occurred after notice of the foreclosure had been given.  *Id.*  In considering Georgia property law and issues of due process, the court concluded that the notice was not

---

[7]     *In re Pajian*, 785 F.3d at 1163.  In chapter 13, it is the burden of all creditors to file claims to be treated in under chapter 13 plan.  *See* 11 U.S.C.§ 1329 (conditioning approval of a chapter 13 plan on treatment of allowed claims); Fed. R. Bank. P. 3002(a) ("[a] secured creditor, unsecured creditor or equity security holder must file a proof of claim or interest for the claim or interest to be allowed ….").

deficient. *Id.* at 484–85. The court noted that a transferor of an interest in property can give no more than what it had. *Baker v. Humphrey,* 101 U.S. 494, 499 (1879). As the court stated, the "grantee is charged with the previous notice to … the grantor." *Suburban West,* 504 B.R. at 485. To hold otherwise, the court concluded, would defeat the purpose of the laws in question. *Id.*

To adopt LaSalle's arguments would defeat the purposes of the Bankruptcy Code. It would subject debtors to creditors who, despite taking no steps to preserve their own rights, could defeat court actions on notice grounds by secretly transferring, for nominal consideration or otherwise, their claims when in the face of those actions, lying in wait and then crying foul on due process grounds. Bankruptcy cases are intended to be expeditious and LaSalle's position is both lacking in expeditiousness and impossible to meet.

B.      Notice to Pine Valley

In LaSalle's second argument, it is careful to not complain of notice but rather to challenge service under Rule 7004. LaSalle argues that Pine Valley was entitled to service under Rule 7004, and no such service was effectuated.

The court need not delve into the specifics of LaSalle's arguments here, as LaSalle's basic contention is flawed. This is about notice, not service. A lack of notice might have resulted in a denial of due process. *See, e.g.,* *In re Collins*, 647 B.R. 425, 430 (Bankr. M.D. Ga. 2022) (finding a lack of notice resulted in a denial of due process); *In re Salazar*, Case No. 21bk06097 (Bankr. N.D. Ill. filed May 10, 2021) (Barnes, J.) (unpublished transcript of hearing on April 20, 2023, attached as an exhibit to the Motion). But LaSalle does not argue that Pine Valley received no notice, only that it did not receive service under Rule 7004. A debtor need not serve creditors with notices at issue here, however. They are notices. Notice is governed by Rule 2002, not Rule 7004.

Had the Debtor sought to provide a treatment of Pine Valley's claim under the Plan that gave Pine Valley the right to service under Rule 7004 such as a request to value a security, the failure to effectuate such service of process would be an issue. *See, e.g.,* 11 U.S.C. § 506(a); Fed. R. Bankr. P. 3012(b) (requiring a request under section 506(a) to be served under Rule 7004). But alone, "[c]onfirmation of a Chapter 13 plan is not a contested matter." *In re Swanson*, 312 B.R. 153, 158 (Bankr. N.D. Ill. 2004) (Barbosa, J.). Such a contested matter only arises once an objection is filed. Fed. R. Bank. P. 3015(f).

Compliance with Rule 7004 is quite simply not the issue here and, even if were, *Espinosa* makes clear that the failure to comply with Rule 7004 does not equate to the denial of a due process right. *Espinosa*, 559 U.S. at 272. Even though the failure to treat Pine Valley under the Plan might result in consequences to Pine Valley or the Debtor, Pine Valley had no right to demand treatment in the Debtor's Plan as it filed no claim. *Pajian*, 785 F.3d at 1163. It was not entitled to service of process under Rule 7004.[8]

---

[8]      To put a finer point on this, we know a request to value a security requires service. LaSalle's contention is essentially that the failure to request to value a security requires service as well. Together, LaSalle's position is essentially therefore that secured creditors must be served with respect to plans, no matter the treatment thereunder. That runs afoul of the specific Bankruptcy Rules stating otherwise.

Was notice to Pine Valley adequate?  The court has been given no reason to presume otherwise.

While Cook County, the seller of the tax claim to Pine Valley, may have had the right to payment under Illinois law for such a claim, *In re LaMont*, 740 F.3d 397, 407 (7th Cir. 2014), Pine Valley, as a tax purchaser, possessed a cognizable claim in the bankruptcy case as against the Debtor's property. *LaMont*, 740 F.3d at 409; *Woodruff*, 600 B.R. at 627–28.  As a result, both Cook County and Pine Valley were entitled to notice.

Both received that notice.  The Notice of Commencement, the Plan, the First Amended Plan and the Second Amended Plan were all sent to Pine Valley at the address listed on the Debtor's Schedule D.  Notice of Commencement; Certificate of Notice; Notice and Certificate of Service [Dkt. No. 21] (for the First Amended Plan); Notice and Certificate of Service [Dkt. No. 23] (for the Second Amended Plan).  Neither argues that the notice to Pine Valley was deficient in some way, nor does LaSalle challenge that notice, only the lack of service.[9]  As a result, the court concludes that Pine Valley received the notice to which it was entitled.

C.      Lack of Treatment of Pine Valley under Section 3.2 of the Plan

LaSalle's final argument, that the Plan is deficient as it failed to address Pine Valley in section 3.2 thereof (or otherwise), needs only passing consideration.

As previously noted, given that Pine Valley was afforded due process, even a Plan confirmed in legal error binds it.  *Espinosa*, 559 U.S. at 275.  But no legal error occurred here.  As has been noted, a debtor may, but does not *have* to, treat a creditor in a chapter 13 plan if that creditor does not file a claim.  *Pajian*, 785 F.3d at 1163; 11 U.S.C.§ 1329; Fed. R. Bank. P. 3002(a).  Thus the plan is not in error for following the controlling law.

CONCLUSION

In light of the foregoing, the Motion is not well taken.  LaSalle's issues are with itself and with Pine Valley for failing to preserve the rights afforded them, not with a debtor who properly afforded the parties known to her of notice and filed and confirmed a plan in accordance with applicable law.

---

[9]      Had there been a challenge to the sufficiency of notice, that under the right circumstances might shift the burden to the Debtor.  *Hill v. Smith*, 260 U.S. 592, 595 (1923).  Mere inaccuracies, however, so long as they do not defeat notice, do not.  *Oxford Video, Inc. v. Walker* (*In re Walker*), 125 B.R. 177, 180 (Bankr. E.D. Mich. 1990).  The court comments to those who have read this far the following erudite analysis of these issues. Timothy A. Barnes, *Fed. R. Bankr. P. 1007:  Determining Proper Creditor Addresses*, 1997 No. 10 Norton Bankr. L. Adviser 7.

The Motion and, out of an abundance of caution, the Incorrect Filing will both be, therefore, DENIED in their entirety.  A separate order to that effect will be entered concurrently herewith.

Dated:  February 2, 2024                                ENTERED:

_____
Timothy A. Barnes
Judge, United States Bankruptcy Court

12